## JAMES H. DUNHAM ET AL.
### v.
## THE MARINE BANK OF SPRINGFIELD.

*Assignments — Judgment Notes — Delivery—Preferences—Fraud—Instructions.*

In a contest as to the allowance of a judgment claim, based on a judgment note, against an insolvent estate as a prior lien, it is *held:* That the contention that the judgment is void as part of the assignment, is not supported by the evidence; and that an instruction touching the delivery of the note was properly refused.

[Opinion filed May 25, 1888.]

APPEAL from the Circuit Court of Sangamon County; the Hon. J. A. CREIGHTON, Judge, presiding.

Messrs. CLINTON L. CONKLING and JOSEPH M. GROUT, for appellants.

When a debtor has formed a determination to voluntarily dispose of his whole estate and has entered upon that determination, it is immaterial into how many parts the performance or execution of his determination may be broken, the

law will regard all his acts having for their object and effect the disposition of his estate, as parts of a single transaction, and on the execution of the formal assignment it will, under the statute, draw to it and embrace within it all prior acts of the debtor having for their purpose the voluntary transfer of his estate for the benefit of his creditors. Statutes, 1877, p. 116, Act of May 22d; Preston v. Spaulding, 120 Ill. 218, and numerous authorities there cited.

Walsh, being insolvent, formed a determination to voluntarily dispose of his whole estate among his creditors and entered upon that determination as shown by the making of numerous judgment notes on which confessed judgments were taken and executions issued, and by a deed of assignment which followed immediately. Walsh and McGrath and also Riordan knew the concern was insolvent in January, 1886. They knew that the original capital and the extraordinary profits realized up to March, 1884, had been wiped out; that the liabilities exceeded the assets by some thousands of dollars; that the assets consisted entirely of the stock, and could under no existing possibility sell for the invoice price. McGrath and Walsh knew before this time, their insolvent condition, for they were under the repeated necessity of borrowing money before this, to meet their obligations.

This debtor, aware of his hopeless insolvency, and having determined to make a disposition of his estate among his creditors, makes, without solicitation, a series of sixteen judgment notes and confesses judgments thereon, for the purpose of preferring certain creditors, and then makes a deed of assignment for the benefit of his creditors generally. All the judgment notes except one are retained by McGrath, Walsh's agent, and are never delivered to the payees. Only two of the payees, the Marine Bank and Chatterton, knew of the existence of the notes, and then only on the day of failure. The series of acts from January 16th to February 18th, 1886, constituted an assignment in law of all the property of the debtor.

When any preferences are shown to have been made or given by the debtor to one creditor over another, by judg-

ments by confession, in such disposition of his estate, such preferences are void and will be set aside. The County Court has full jurisdiction of an equitable character, for this purpose. Statutes Ill. 1877, Act May 22, Sec. 13; Preston v. Spaulding, 120 Ill. 218; Livermore v. McNair, 34 N. J. Eq. 478; Hahn v. Salmon, 20 Fed. Rep. 801; U. S. v. Griswold, 8 Fed. Rep. 496; Freydendall v. Baldwin, 103 Ill. 325; Field v. Ridgely, 116 Ill. 424.

In making this disposition of his estate or this assignment, Walsh, by the confession, preferred certain creditors, of whom the Marine Bank claims to be one. He says he made the note in controversy to protect, that is, prefer, Riordan. He made the fifteen other notes avowedly to prefer his friends.

A note is valid only from the time of its delivery. For all legal purposes the note is to be considered as made when it is delivered. Lansing v. Gaine, 2 Johns. 300; S. C., 3 Am. Dec. 422; First National Bank v. Strang, 72 Ill. 559.

Messrs. PATTON & HAMILTON, and BRADLEY & BRADLEY, for appellees.

PLEASANTS, J. In May, 1883, James E. Walsh, then and ever since a resident of Peoria, purchased at sheriff's sale a stock of dry goods in Springfield, and there continued the business under the management of Thomas McGrath, his father-in-law, until February 18, 1886, when he failed and made a general assignment for the benefit of his creditors.

Having become embarrassed in the operation, on the 16th of January, 1886, he executed eight judgment notes to divers parties, respectively, for money borrowed of them and used in the business, aggregating about $13,000. Early in February he executed three others of like character, amounting together to something over $3,000, one of which, for $1,901.50, was payable to the Marine Bank and is here in controversy. It was delivered to Dennis Riordan, for his use, and was given for money borrowed of him to meet pressing claims and was so applied. Riordan retained it until the day before the assignment, when he transferred it with his indorsement to the bank and obtained credit for the amount.

Why it was made payable to the bank is perhaps not clearly explained. It seems that Riordan had made frequent loans to Walsh (or to McGrath for him) when he was pressed, without taking notes, which were repaid in a few days. He expected this would be so paid, and did not take the note until some time after the loan had been made, and when he had become somewhat anxious about it. Perhaps he was indebted to the bank or expected to be, and hoped to use it there without indorsement. Whatever the reason, it is abundantly shown to have been delivered to him for his own use and for money actually loaned by him.

On the 16th of February, upon McGrath's report of the condition of the business and at his urgent request, Walsh came to Springfield, and after conferring with Riordan and with Mr. Bradley, who held some of these notes as attorney, it was deemed advisable for the protection of the payees that judgments should be taken upon them. This was done in the afternoon of the 17th. Riordan requested the bank to take the judgment that was then entered on its note, as he was liable on it. Later in the evening Walsh sent for Mr. Patton and on his advice as counsel determined to make a general assignment for the benefit of his creditors. Both he and McGrath positively testified that the subject of an assignment was not contemplated by them, or by either of them so far as the other knew, until after the judgments were entered up, and then only on Mr. Patton's advice.

The deed of assignment was executed and filed early on the morning of the 18th and Riordan was appointed assignee, who in due time and under the direction of the County Court made sale of the property, and holds the proceeds. Sixteen judgment claims, including that of the bank, were filed and asked to be treated as prior liens. The unsecured creditors filed objections thereto, on which issue was made and trial had, resulting in a verdict for the judgment claimants. So also in the Circuit Court; and hence the further appeal here prosecuted.

Appellants contend that these judgments were part of, and one with, the assignment, and therefore void under the statute,

Dunham v. Marine Bank of Springfield.

as preferences. For proof they rely on the condition of the business as necessarily known to Walsh and these payees when the notes were executed, and the circumstances and course of proceeding by them from that time until the deed of assignment was made. It would be useless to state these facts or to review the argument in detail. That it was ingenious and forcible, and of a character especially apt to persuade the average jury—which is found as a rule to be sufficiently alive to what are or are claimed to be signs of fraud—may well be conceded. But it was met by the interval of time between the making of the notes and of the assignment, by the positive testimony referred to of the only parties who certainly knew the intention, and by other circumstances, notably the large amount of indebtedness paid by Wa'sh, through Mc-Grath, in December, January and February preceding the assignment, in excess of the amount realized on sales during that period, as showing a hope and purpose, continuing after these notes were made, to carry on the business. Upon this conflict of evidence two juries have passed, reaching the same conclusion.

The instructions given were all that appellants asked, with the exception of one to the effect that the relation of debtor and creditor between Walsh and the bank did not arise until the delivery of the note in controversy to the bank, and that said note is not to be considered in existence until such delivery.

Without passing upon the technical soundness of the proposition last stated, we are of opinion that, as applied to this case, it was clearly misleading, the proof being that it was delivered to and received by Riordan. As evidence of Walsh's indebtedness to him, and the means of securing it, upon the question whether it was or was not a part of the assignment, its bearing is precisely the same as if it had been made payable to him, or been by him immediately transferred to the bank. For that reason we think it was properly refused; and besides, if it had a legal existence at any time before the assignment was contemplated, it would be immaterial whether that time was an hour or a month. *Judgment affirmed.*